**Paul McMANN, Plaintiff,**

v.

**John DOE, Defendant.**

**Civil Action No. 06–11825–JLT.**

United States District Court, D. Massachusetts.

Oct. 31, 2006.

---

Perry A. Henderson, Looney & Grossman, LLP, Boston, MA, for Plaintiff.

*MEMORANDUM*

TAURO, District Judge.

### Background

Plaintiff Paul McMann is a real estate developer and resident of Massachusetts.[1] Some unknown person has created a web-

---

1. *Complaint,* Paper # 1, ¶ 1 and ¶ 6.

site at http://www.paulmcmann.com. This website contained a portrait photograph of Mr. McMann, the statement that he "turned lives upside down," and a suggestion to "be afraid, be very afraid."[2] The website announces it will soon be updated with specific evidence of Plaintiff McMann's alleged misdealings.[3]

The domain name of this website was registered[4] through GoDaddy.com.[5] GoDaddy.com's public records[6] indicate that the domain is registered to a company called Domains by Proxy, Inc.[7] This company regularly serves as an intermediary in the registration process, thereby allowing for the anonymity of the true registrant.[8] Whoever created the website deliberately shielded their identity by enlisting the help of Domains by Proxy, Inc.

On October 10, 2006, Plaintiff filed the instant suit alleging that the unknown party operating the website, hereinafter John Doe[9], violated his "statutory right of privacy," infringed his "common law right to privacy" including common-law copyright, and committed defamation.[10] Plaintiff alleged that he has asked GoDaddy.com and Domains by Proxy, Inc., to reveal John Doe and that they had refused or not responded.[11] With the Complaint, Plaintiff filed an ex-parte motion seeking leave to subpoena these companies, thus compelling them to reveal John Doe's true name. With John Doe's true name, the plaintiff could amend his complaint, serve legal pro-

---

2. *Id.* at ¶ 10 and ¶ 31.

3. http://www.paulmcmann.com (last visited on October 23, 2006).

4. By registering a domain name, an internet user enables any computer to access the user's website simply by entering that domain name into their browser. *See* Welcome to ICANN: "What is the Domain Name System," www.icann.org/new.html (last visited on October 23, 2006).

5. WHOIS Search Results for paulmcmann.com, http://who.godaddy.com/whois.aspx?domain=paulmcmann.com & prog_id=godaddy (last visited on October 23, 2006.)

6. GoDaddy must maintain "WHOIS" records. WHOIS *information normally specifies the* name and details of a domain registrant:

> Applicants to register a domain name submit to the registrar contact information, including at a minimum, the applicant's name, postal address, telephone number, and electronic mail address. The ICANN Agreement, referring to this registrant contact information under the rubric "WHOIS information," requires the registrar, under terms discussed in greater detail below, to preserve it, update it daily, and provide for free public access to it through the Internet

as well as through an independent access port, called port 43.
*Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 395 (2d Cir.2004).

7. WHOIS Search Results for paulmcmann.com, *supra* note 3.

8. How Private Registrations Work, http://www.domainsbyproxy.com/GetDBP.aspx?prog—id= (last visited on October 23, 2006).

9. As a technical note, the reader should understand that the operator of a website may be different from the registrant. By registering a domain name, a party simply reserves that name so that it has the rights to later build a site accessible by users who enter that domain name into a browser. In this case, Domains by Proxy, Inc., presumably at the behest of John Doe, registered the name www.paulmcmann.com. No content would be accessible from this site until someone linked this site to a computer serving up information to visitors. While the identity of the registrant must be a matter of public record, the corporate form of Domains by Proxy, Inc., essentially serves to keep the actual operator anonymous. There is no evidence that Domains by Proxy, Inc., has any role in the actual operation of the site.

10. *Complaint,* Paper 1.

11. *Id.,* at ¶¶ 13–16.

cess upon the actual operator of the site, and seek monetary and injunctive remedies.

This court denied that motion. Plaintiff cited no law and no justification authorizing this court to allow this subpoena power. Furthermore, Plaintiff submitted no sworn affidavit in support of that motion. On October 13, 2006, Plaintiff resubmitted his motion with an affidavit swearing to the harm he had suffered and the measures he had already taken to reveal John Doe's name. The court now considers Plaintiffs Amended Ex Parte Motion For Leave To Subpoena Domains by Proxy, Inc., and GoDaddy.com, Inc.

### Discussion

This case presents many novel issues. So far, this case has but one party, Plaintiff Paul McMann. The Complaint alleges violations of state law, and the present motion seeks a subpoena that would compromise a speaker's anonymity. This court must consider jurisdictional, procedural, and substantive questions. As a general rule, anonymous speakers should not be able to use the internet to freely defame individuals.[12] But, in this case, there are problems that compel this court to deny relief to the plaintiff.

This type of ex parte John Doe suit is commonly used to secure subpoenas in cases alleging violations of federal copyright law.[13] Jurisdiction for these suits is predicated on a federal question. Additionally, the procedure for these suits is specifically set forth in the Digitial Millenium Copyright Act.[14] This statute unleashes subpoena power after a plaintiff demonstrates to the court that the rights-holder sent an alleged infringer notice of the violation.

The instant suit does not allege a violation of federal copyright law but, instead, asserts state claims.[15] It is unclear then what standard should apply, and Plaintiff has not directed the court to any authority specifying a standard. In the absence of clear guidance, this court will inquire into the standard in three steps, considering first whether there is jurisdiction, then addressing the procedural foundation for allowing a subpoena, and then the constitutional and substantive ramifications of such an action.

### Jurisdiction

 Any federal court should address the issue of subject matter jurisdiction *sua sponte*.[16] It is axiomatic that the federal courts can only hear cases where there is a federal question[17] or where there is complete diversity of state citizenship between the opposing parties.[18] Plaintiff's Complaint lists no federal claims and asserts

---

**12.** *See Best Western Int'l v. Doe,* 2006 WL 2091695, 2006 U.S. Dist. LEXIS 56014, at *9 (D.Ariz.2006) (" 'Those who suffer damages as a result of tortious or other actionable communications on the Internet should be able to seek appropriate redress by preventing the wrongdoers from hiding behind an illusory shield of purported First Amendment rights.' *In re Subpoena Duces Tecum to America OnLine, Inc.,* 52 Va. Cir. 26, 2000 WL1210372, at *5 (Va.Cir.Ct. Jan. 31, 2000).").

**13.** *See Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs.,* 351 F.3d 1229 (D.C.Cir.2003).

**14.** 17 U.S.C. § 512(h) (2006).

**15.** If Plaintiff McMann made the picture that was previously posted on the website, he would likely have a federal copyright in it, as copyright subsists upon fixation. 17 U.S.C. § 102(a) (2006). Nonetheless, there may not be infringement because of the doctrine of fair use. *See* 17 U.S.C. § 107 (2006). In any event, Plaintiff does not allege a copyright violation, so this court need not consider it.

**16.** *McBee v. Delica Co.,* 417 F.3d 107, 127 (1st Cir.2005).

**17.** *See e.g.,* 28 U.S.C. § 1331 (2006).

**18.** 28 U.S.C. § 1332 (2006).

jurisdiction based on diversity of citizenship.[19] The Complaint lists the address of Domains by Proxy, Inc., an Arizona company. The fact that Plaintiff seeks leave to subpoena Domains by Proxy, Inc., does not, however, make them a party to the case. They have not been subject to formal service of process and have not been given an opportunity to respond to the motion. The diversity of citizenship between McMann and Domains by Proxy, Inc., therefore, is not controlling.

This court must then decide if it has authority to exercise jurisdiction over state claims in a case with only one party. In the Complaint, Paul McMann acknowledges that John Doe's residency is unknown. Of course, at this point Plaintiff could not be expected to know John Doe's identity. While this court is sympathetic to Plaintiff's situation, there is a very troubling possibility that the court could order John Doe unmasked, simply to discover that John Doe is a Massachusetts resident, that there was no diversity, and that the

court acted without subject matter jurisdiction.

Because of this risk that jurisdictional authority could suddenly disappear, many courts are wary of entertaining John Doe diversity suits.[20] The First Circuit Court of Appeals has not ruled on the issue.[21] In 1987, the Ninth Circuit Court of Appeals ruled that the presence of John Doe defendants precluded removing diversity cases from state to federal court.[22] In 1988, Congress amended the removal statute, 28 U.S.C. § 1441, by declaring that the presence of defendants sued under fictitious names does not defeat removal jurisdiction.[23] This amendment does not resolve the problem in the present case, which is before the court on original diversity jurisdiction, under 28 U.S.C. § 1332. Since the 1988 amendment, some district courts allow John Doe cases in federal court on original diversity jurisdiction.[24] These courts reason that it would be unfair to apply different standards under § 1332 and § 1441.[25] On the other hand, one

**19.** *Complaint,* Paper # 1, at ¶ 5.

**20.** *See* 2–8 *Moore's Federal Practice—Civil* § 8.03[5][b][iv] (2006). *See also* Megan M. Sunkel, *And the I(SP)s Have It ... But How Does One Get It? Examining the Lack of Standards for Ruling on Subpoenas Seeking to Reveal the Identity of Anonymous Internet Users in Claims of Online Defamation,* 81 N.C.L.Rev. 1189, 1202 (2003).

**21.** The First Circuit has recognized that when a John Doe named in a removal action later turns out to be non-diverse, the case must be dismissed. *Casas Office Machs. v. Mita Copystar* Am., 42 F.3d 668, 674 (1st Cir.1994). The First Circuit has not commented, however, on the situation for original jurisdiction. *Allied Elec. Servs. v. Doe Corporate Alter Egos,* 1993 U.S. Dist. LEXIS 21270, 1–2 (D.N.H. 1993). One district court in this circuit has allowed the case to remain in federal court until the plaintiff had a reasonable time to amend his complaint with specific information regarding the defendant's citizenship for diversity purposes. *Id.* As is discussed below, the Plaintiff in the present case has shown

that he cannot proceed without a court order. This court must, therefore, either dismiss the case, or issue a order allowing subpoenas when there might not be proper subject matter jurisdiction.

**22.** *Bryant v. Ford Motor Co.,* 832 F.2d 1080, 1083 (9th Cir.1987).

**23.** *Judicial Improvements and Access to Justice Act,* 100 P.L. 702, 1016 (1988).

**24.** *See e.g., Macheras v. Center Art Galleries–Hawaii, Inc.,* 776 F.Supp. 1436, 1440 (D.Haw.1991).

**25.** If this case were filed originally in state court, and if John Doe turned out to be from a state other than Massachusetts, he would then have the opportunity to remove to federal court. The *Macheras* court worried that if it did not import the amendment into § 1332, the Defendant would then have greater power to make forum selection than the plaintiff. *Id.*

district court concluded that Congress's amendment of § 1441, and not of § 1332, indicated a legislative intent that the amendment not apply in original jurisdiction cases.[26]

■ This court adopts the reasoning of the latter case. It is Congress's task to grant jurisdiction to the district courts, and it is proper to presume that Congress understood the consequences of its legislation. Congress's 1988 amendment simply allows cases to be removed to federal court where, because of the unknown party, there would possibly be only partial diversity. Reading amended language of § 1441 into § 1332 would accomplish the much broader result of allowing a case with only one party and only state claims to proceed initially in federal court.

This court finds that it has no subject matter jurisdiction over the Complaint and orders it dismissed without prejudice.

*Procedural issues*

■ Normally, a ruling that no jurisdiction exists would end the inquiry.[27] Nonetheless, considering the novelty of the jurisdictional issues, and in an abundance of caution, this court will lay out an alternative basis for its decision.

■ As a procedural matter, Plaintiff's motion is appropriate. A subpoena is a discovery tool.[28] Taken at its most basic, Plaintiff's motion is a request for leave to commence discovery. On its face, Rule 26(d) precludes discovery from commencing before the parties hold their initial meeting:

> Except in categories of proceedings exempted from initial disclosure under Rule 26(a)(1)(E), or when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f).

Thus, the bar on pre-conference discovery may be lifted by court order. Another federal district court, considering an ex parte motion for leave to subpoena in an internet defamation case, interpreted Ninth Circuit precedent to apply a good cause standard.[29] The factors that courts typically weigh in this good cause inquiry include the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity.[30] Because this is an ex parte motion, this court specifically required Plaintiff show by sworn affidavit that irreparable harm will result from a failure to commence discovery, and that a reasonable attempt to identify the other party was made.[31]

In this case, the discovery is essential. Without the ability to issue a subpoena, John Doe's true name would remain unknown, this suit could not proceed, and Plaintiff McMann could receive no remedy.

---

**26.** *See Controlled Env't Sys. v. Sun Process Co.*, 936 F.Supp. 520, 522 (D.Ill.1996).

**27.** *Director, Office of Workers' Compensation Programs, United States Dep't of Labor v. Bath Iron Works Corp.*, 853 F.2d 11, 13 (1st Cir. 1988) ("No matter how tantalizing a problem may be, a federal appellate court cannot scratch intellectual itches unless it has jurisdiction to reach them. And in this instance, we are persuaded that jurisdictional constraints foreclose us from inquiring, here and now, into the merits.").

**28.** *Fed.R.Civ.P.* 45(a)(1)(C); *Fed.R.Civ.P.* 26(a)(5).

**29.** *Best Western Int'l*, 2006 WL 2091695, at *1, 2006 U.S. Dist. LEXIS 56014, at *3.

**30.** 6–26 *Moore's Federal Practice—Civil* § 26.12 (2006).

**31.** These requirements are derived from the standard to receive an ex parte temporary restraining order. *Fed.R.Civ.P.* 65(d).

In his sworn affidavit, Plaintiff McMann asserts that he is losing business, has trouble with financing, and is suffering irreparable reputational harm because of this website.[32] By allowing this case to proceed, discovery could reveal John Doe, allow justice to be done, and end this alleged harm. Furthermore, this motion must be considered ex parte because John Doe is not known. The sole purpose of the motion is to determine his identity. Plaintiff swears that he has contacted the corporations that possess this identity information and they have either not responded or refused to proceed without a court order.[33]

In summary, a showing of irreparable harm and a need to proceed ex parte would move this court to find that leave to file early subpoenas is procedurally proper.

### Constitutional concerns

 Speech on the internet receives First Amendment protection.[34] First Amendment protection includes protection of anonymous speech.[35] At the same time, there is no right to freely defame others.[36] This court must weigh these considerations in deciding whether to remove John Doe's cloak of anonymity so that he can be subject to this defamation suit. Courts must adopt an appropriate standard such that aggrieved parties can obtain remedies, but can not demand the court system unmask every insolent, disagreeable, or fiery anonymous online figure.

The Supreme Court of Delaware[37] and the Federal District Court of Arizona[38] considered how to weigh these interests. Rather than require mere good faith allegations or even specific pleading, these courts required the plaintiff meet a summary judgment standard.[39] Imagining that the anonymous defendant was present and had moved for summary judgment, the plaintiff must then produce affidavits and arguments that set forth a prima facie case of defamation and would allow a jury to find defamatory harm.[40] If a plaintiff

**32.** *Paul McMann's Affidavit in Support of Plaintiffs' [sic] Ex Parte Motion for Leave to Subpoena Domains by Proxy, Inc. and GoDaddy.com, Inc.*, Exhibit A to Plaintiff's Ex Parte Motion for Leave to Subpoena, Paper # 3 [hereinafter *McMann Affidavit*], ¶¶ 12–18.

**33.** *Id.* at ¶¶ 7–11.

**34.** *Reno v. ACLU*, 521 U.S. 844, 869, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (distinguishing the internet from the broadcast media and striking down an unconstitutionally broad regulation of cyberspace).

**35.** *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 199, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) (striking down a state law requiring that a petition circulator identify themselves with a badge). *See also Best Western Int'l*, 2006 WL 2091695 at *3, 2006 U.S. Dist. LEXIS 56014 at *7–8 ("The protections of the First Amendment extend to the Internet. Courts have recognized the Internet as a valuable forum for robust exchange and debate. Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Courts also recognize that anonymity is a particularly important component of Internet speech. Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas; the constitutional rights of Internet users, including the First Amendment right to speak anonymously, must be carefully safeguarded.") (citations omitted).

**36.** *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) ("The legitimate state interest underlying the law of libel is the compensation of individuals for the harm inflicted on them by defamatory falsehood.").

**37.** *John Doe No. 1 v. Cahill*, 884 A.2d 451, 460 (Del.2005).

**38.** *Best Western Int'l*, 2006 WL 2091695 at *4, 2006 U.S. Dist. LEXIS 56014 at *11.

**39.** *Id.; Cahill*, 884 A.2d at 460.

**40.** *Id.* at 463.

could not meet this standard, then there is the risk that the subpoena would needlessly pierce John Doe's veil of anonymity. If once revealed, John Doe was able to obtain summary disposition of the case, his exposure would accomplish nothing.[41] If instead, the defendant must proceed to trial, to answer to a jury for the tort he allegedly committed, then the subpoena will allow the court to perform its adjudicative role.

■ This standard has problems. For example, the First Amendment requires that the plaintiff show actual malice or fault in all defamation cases of public concern.[42] These inquiries turn on the reasonableness of the defendant's actions in light of the facts known to him.[43] A plaintiff in a John Doe defamation action could not be expected to show actual malice on the part of an anonymous defendant. For this reason, the Delaware Supreme Court ruled that the plaintiff need not show actual malice to obtain the subpoena.[44] This presents a problem, as the requirement of proving actual malice is the mechanism by which the Supreme Court has balanced First Amendment protections in defamation cases.[45] Under this approach, a public figure could unmask anonymous critics without meeting an essential step in the prima facie case, a showing of actual malice. At the same time, requiring a preliminary showing of fault would mean no subpoenas would ever issue, and character assassins would be free to trumpet hurtful lies from all corners of the internet.[46]

■ Another problem with employing a summary judgment standard in John Doe defamation cases is the level of detail required in the factual allegations. Normally, bare assertions in an affidavit are not adequate to defeat summary judgment, as the plaintiff must adduce specific facts.[47] At the same time, prior to discovery a court cannot reasonably expect a plaintiff to produce evidence that could rise to the required level of clear and convincing evidence.[48]

41. Of course, a finding sufficient to grant a subpoena should not preclude the anonymous defendant from moving for Summary Judgment once he is revealed and has been able to conduct appropriate discovery.

42. See *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 758, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985); *Gertz*, 418 U.S. at 349, 94 S.Ct. 2997.

43. *Id.*

44. *Cahill*, 884 A.2d at 464.

45. See e.g., *Gertz*, 418 U.S. at 340, 94 S.Ct. 2997.

46. Plaintiff might be unable to sue the company posting the information. Under the Communications Decency Act of 1996, Internet Service Providers are not themselves liable for defamatory statements published through their services. 47 U.S.C. § 230(c)(1) (2006). This provision does not give the plaintiff the right to demand takedown of offending materials in the way that the Digital Millennium Copyright Act allows for. *Compare* 47 U.S.C. § 230(c) *with* 17 U.S.C. § 512(c) (2006). Without the right to subpoena, the defamation plaintiff could be without legal remedy. In the present case, it is unclear whether Domains by Proxy, Inc., as a party arguably complicit in the allegedly defamatory speech by virtue of its registration assistance, would qualify for protection as an Internet Service Provider. Such an issue, however, must be addressed in a case where Domains by Proxy, Inc., is sued and has an opportunity to present arguments.

47. See e.g., *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir.2000) ("To the extent that affidavits submitted in opposition to a motion for summary judgment merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge, they are insufficient.").

48. This is the standard required to show actual malice for summary judgment in public figure defamation cases. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ While there may therefore be problems with the mechanics of a summary judgment test, it is reasonable to apply some sort of a screen to the plaintiff's claim before authorizing the subpoena. In this case, a preliminary screening of Plaintiff's assertions show that not only could they not pass summary judgment, but that they fail to state a claim.

■ Plaintiff McMann's first claim is for invasion of his statutory right of privacy under Massachusetts law. "A person shall have a right against unreasonable, substantial or serious interference with his privacy." [49] The Massachusetts Supreme Judicial Court has explained this right:

"The notion of a right of privacy is founded on the idea that individuals may hold close certain manuscripts, private letters, family photographs, or private conduct which is no business of the public and the publicizing of which is, therefore, offensive. The appearance of a person in a public place necessarily involves doffing the cloak of privacy which the law protects." [50]

Publishing a description of business activity, describing a posting made on a public message board, or distributing a publicly available portrait photograph all resemble publishing appearances made in a public place. These activities do not impinge this right of privacy.

■ Mr. McMann also has the right to prevent others from using his likeness for advertising purposes.[51] The right protected in this statute is the "interest in not having the commercial value of one's name, portrait or picture appropriated to the benefit of another." [52] This right is not infringed when Mr. McMann's portrait "is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity." [53] By posting Paul McMann's photograph on his webpage, John Doe did not attempt to employ the photo for commercial value, but rather as part of a declaration of his opinion of Mr. McMann. John Doe has not infringed Mr. McMann's statutory rights to prevent appropriation of his name or likeness for commercial gain.

■ Plaintiff McMann's second claim is that the posting of the information and photograph violated his common law rights to privacy. Massachusetts does not recognize a "false light" invasion of privacy claim.[54] Plaintiff's Complaint also mentions a violation of his common law copyrights. But, under the express preemption provision of federal copyright law, the federal right of copyright preempts state rights protecting the same content and activities.[55] Copying a photograph is the type of activity and content protected by federal copyright law.[56] Plaintiff McMann cannot rely on a theory of common law copyright.

The Complaint does not state a claim under any of the traditional branches of privacy rights. The first and second counts of the Complaint provide no basis

49. Mass. Gen. Laws ch. 214, § 1B (2006).

50. *Cefalu v. Globe Newspaper Co.*, 8 Mass.App. Ct. 71, 391 N.E.2d 935, 939 (1979)

51. Mass Gen Laws. Ch 214, § 3A (2006).

52. *Tropeano v. Atlantic Monthly Co.*, 379 Mass. 745, 400 N.E.2d 847, 850 (1980) (dismissing plaintiff's claim where defendant was merely reporting on plaintiff's situation).

53. *Albright v. Morton*, 321 F.Supp.2d 130, 139–140 (D.Mass.2004).

54. *Ayash v. Dana–Farber Cancer Inst.*, 443 Mass. 367, 822 N.E.2d 667, 682 n. 16 (2005).

55. 17 U.S.C. § 301 (2006).

56. 17 U.S.C. § 102, § 106 (2006).

for this court to order John Doe's identity be revealed.

 Plaintiff McMann's third claim is for defamation. John Doe has published comments that McMann "turned lives upside down" and warning readers to "be afraid". To state a claim for defamation, a plaintiff must show that a defendant made a defamatory statement which held "the plaintiff up to contempt, hatred, scorn, or ridicule or tend[ed] to impair his standing in the community, at least to his discredit in the minds of a considerable and respectable class in the community." [57] Where the speech is a matter of public concern,[58]

the plaintiff must show falsity and actual damages.[59] Plaintiff McMann has submitted an affidavit attesting to irreparable harm and swearing that the statements on the website are false.[60]

 This court finds that these two statements are not provable as true or false, but rather are opinions. The Supreme Court has ruled that there is no protection for opinion per se, and that a purported opinion which implies a factual basis that could be proven true or false could be actionable as defamation.[61] The Court ruled that, in matters of public opinion, a statement not provable as false was protected as opinion.[62] "To determine

---

57. *Yohe v. Nugent,* 321 F.3d 35, 39–40 (1st Cir.2003).

58. It is difficult at this point to determine whether John Doe's comments on the website are a matter of public concern. The question must be determined by examining the whole record to learn the comments' content, form, and context. *Dun & Bradstreet,* 472 U.S. at 761–62, 105 S.Ct. 2939. For example, the Supreme Court has ruled that credit reports and their effect on business reputation are not of public concern. *Id.*

Only a relatively small section of the populace need be concerned for a matter to count as a public concern. *Levinsky's, Inc. v. Wal-Mart Stores,* 127 F.3d 122, 132 (1st Cir.1997). Mr. McMann himself certified that many of his business associates are troubled by the remarks. *McMann Affidavit,* ¶¶ 12–18. Furthermore, a speaker's subjective intent to create a public discourse is one of the "constellation of relevant factors implicated." *Id.* at 134. John Doe's webpage calls for comments and public discussion of Mr. McMann. *See* http://www.paulmcmann.com (last visited October 23, 2006).

In this ex parte setting, this court is hesitant to resolve this issue against John Doe by concluding that the comments are not of public concern. Such a conclusion would substantially reduce John Doe's protection (as Plaintiff McMann would not need to establish falsity) without giving him an opportunity to argue the issue. Considering the factors cutting in both directions, this court will make an initial determination that the comments are of public concern.

59. *Yohe,* 321 F.3d at 39–40.

60. *McMann Affidavit,* ¶ 6 and ¶¶ 12–18.

61. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 21, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). *See also Levinsky's,* 127 F.3d at 127("A statement couched as an opinion that presents or implies the existence of facts which are capable of being proven true or false can be actionable.").

62. *Id.* at 19–20. Technically, this protection applies only to media defendants. *Id.* The Supreme Court did not comment on the protection available for non-media defendants and the First Circuit does not appear to have addressed the issue. The Massachusetts Supreme Judicial Court has recognized that this definition of opinion applies, "at least" to media defendants. *Shaari v. Harvard Student Agencies,* 427 Mass. 129, 132, 691 N.E.2d 925 (Mass.1998). "[T]his Court finds persuasive former Justice Brennan's observation that 'in the context of defamation law, the rights of the institutional media are no greater and no less than those enjoyed by other individuals or organizations engaged in the same activities.' " *Rubenstein v. Manhattan & Bronx Surface Operating Auth.,* 1997 WL 833456, at *5, 1997 U.S. Dist. LEXIS 16661, at *14 (E.D.N.Y.1997) (citing *Dun & Bradstreet, Inc.,* 472 U.S. at 784, 105 S.Ct. 2939 (Brennan, J., dissenting)) (considering the same question of the scope of the opinion defense for non media defendants). *See also* Robert D. Sack, *Protection of Opinion under the First Amend-*

whether or not a statement is an opinion, a court 'must examine the statement in its totality and in the context in which it was uttered or published.' " [63]

The webpage does indicate that specific facts are forthcoming that support John Doe's assertions. But, this court concludes that the accusation that one has "turned lives upside down", and the suggestion to "be afraid", are bland, vague, and subjective and do not constitute defamation. A person can feel that their life is turned upside down by all manner of activities. The statement is so vague, that attempting to judge its falsity, as this court would be required to do at summary judgment, would be an exercise in speculation. Plaintiff's affidavit merely contains an assertion that the statement is not true. Bare assertions in an affidavit are not adequate to defeat summary judgment.[64] If John Doe posts further specific statements on the website, which Plaintiff could rebut with detailed factual affidavits, this court would consider granting leave to subpoena (if it had jurisdiction). On the present record, however, this court concludes that Plaintiff has not met the evidentiary burden required to remove John Doe's constitutional interest in his anonymity.

**Conclusion**

In a state law claim with only one identified party, this court rules that it is without subject matter jurisdiction to hear the case. In the alternative, this court would deny the Motion for Leave to Subpoena and dismiss the underlying case for failing to state a claim upon which relief can be granted.

AN ORDER WILL ISSUE.

---

ment: Reflections on Alfred Hill, "Defamation and Privacy under the First Amendment", 100 Colum. L.Rev. 294, 326 (2000) ("As in other areas of defamation law, courts have tended to shy away from a press/non-press distinction. They apply Hepps—and therefore the Hepps-based protection for opinion—to non-media defendant.")

**63.** Yohe, 321 F.3d at 41.

**64.** See e.g., Santiago–Ramos, 217 F.3d 46, 53.