**INTERSCOPE RECORDS, Atlantic Recording Corporation, BMG Music, Capitol Records, Inc., Elektra Entertainment Group, Inc., Arista Records LLC, Sony BMG Music Entertainment, UMG Recordings, Inc., Virgin Records America, Inc., Warner Bros. Records Inc., and Laface Records LLC, Plaintiffs,**

v.

**DOES 1–7, Defendants.**

**Civil Action No. 4:07cv52.**

United States District Court,
E.D. Virginia,
Newport News Division.

July 12, 2007.

█

Michael A. Zito, Lathrop & Gage, Washington, DC, for Plaintiffs.

## OPINION and ORDER

KELLEY, District Judge.

This matter is before the Court on plaintiffs' *ex parte* Motion for Leave to Take Immediate Discovery. (Docket No. 3). Plaintiffs move to serve a subpoena on the College of William and Mary (the "College") in Williamsburg, Virginia to discover information about each of the unknown Doe defendants.

Plaintiffs allege that the seven Doe defendants utilized the internet service provided to them by the College to access an online media distribution system for the purpose of downloading and distributing plaintiffs' copyrighted works. The copyrighted material was transferred utilizing a process called peer-to-peer ("P2P") file-sharing. "P2P systems allow users to disseminate files stored on their computers to other internet users." *In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*, 393 F.3d 771, 777 (8th Cir.2005).[1] Plaintiffs have identified each defendant by the unique Internet Protocol ("IP") address assigned to that defendant on the date and time of their alleged infringing activity. Plaintiffs seek to discover from

---

**1.** The most notorious example of these P2P file sharing systems is the former Napster website. *See MGM Studios Inc. v. Grokster,* *Ltd.,* 545 U.S. 913, 924, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005).

the College the identity of the persons to whom these IP addresses were assigned.

■ Plaintiffs' motion asserts that the Cable Communications Policy Act of 1984 ("CCPA"), 47 U.S.C. § 551(c)(2)(B), authorizes their *ex parte* subpoena for subscriber information. The CCPA states: "A *cable operator* may disclose such information if the disclosure is . . . made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed." 47 U.S.C. § 551(c)(2)(B) (emphasis added). The CCPA defines cable operators as:

> any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system.

47 U.S.C. § 522(5). Plaintiffs have not established that the College falls within this definition and common sense dictates otherwise. Even assuming that the College is a cable operator, the CCPA provides that only "a *government entity* may obtain personally identifiable information concerning a cable subscriber pursuant to a court order. . . ." 47 U.S.C. § 551(h) (emphasis added). Because plaintiffs are not government entities, the CCPA does not authorize their *ex parte* subpoena.

■ Plaintiffs' motion and accompanying brief (Docket Nos. 3 & 4) neglect to mention that Congress provided a framework for subpoenas to identify internet infringers in the Digital Millennium Copyright Act ("DMCA"), specifically 17 U.S.C. § 512(h). Section 512 of the DMCA establishes safe harbor provisions for four categories of internet service providers ("ISP") based on the function which the ISP performs with respect to the infringing material—"transmitting it per § 512(a), caching it per § 512(b), hosting it per § 512(c), or locating it per § 512(d)." *Recording Indus. Ass'n of Am. v. Verizon Internet Servs.*, 351 F.3d 1229, 1236 (D.C.Cir.2003). ISPs are affected differently by Section 512 depending on their function because each category sets forth distinct requirements for obtaining safe harbor protection. *Recording Indus. Ass'n of Am. v. Univ. of N.C. at Chapel Hill*, 367 F.Supp.2d 945, 948–49 (M.D.N.C.2005).

Plaintiffs assert that the College simply acted as a conduit by providing the Doe defendants with access to the internet. The College did not cache, host or locate plaintiffs' copyrighted materials. The College therefore falls within the transmitting category of service providers in Section 512(a), which is defined as follows:

> As used in subsection (a), the term "service provider" means an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.

17 U.S.C. § 512(k)(1)(A).

Section 512(h) sets forth the requirements for a subpeona as follows:

(1) Request. A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.

(2) Contents of request. The request may be made by filing with the clerk—

(A) *a copy of a notification described in subsection (c)(3)(A);*

(B) a proposed subpoena; and

(C) a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title.

(Emphasis added). This provision does not authorize the issuance of subpoenas against Subsection (a) ISPs, such as the College, *In re Charter Commc'ns., Inc., Subpoena Enforcement Matter,* 393 F.3d at 777; *Verizon Internet Servs.,* 351 F.3d at 1236; *Univ. of N. Carolina at Chapel Hill,* 367 F.Supp.2d at 948–49, because before a subpoena may issue, the clerk must first receive a copy of the notice described in Subsection (c)(3)(A). This notice applies only to the categories of ISPs in Subsections (b)-(d). Upon receipt of the notice, Subsection (b)-(d) ISPs must respond "expeditiously to remove, or disable access to, the material that is claimed to be infringing," 17 U.S.C. §§ 512(b)(2)(E), 512(c)(1)(C), & 512(d)(3), to satisfy their safe harbor requirements. The notice and takedown provisions outlined above are noticeably absent from Section 512(a). In sum,

" § 512(h) is structurally linked to the storage functions of an ISP and not to its transmission functions, such as those listed in § 512(a)." ... [I]t is the province of Congress, not the courts, to decide whether to rewrite the DMCA "in order to make it fit a new and unforseen internet architecture" and "accommodate fully the varied permutations of competing interests that are inevitably implicated by such new technology."

*In re Charter Commc'ns., Inc., Subpoena Enforcement Matter,* 393 F.3d at 777 (*quoting Verizon Internet Svcs.,* 351 F.3d at 1237–38); *accord Univ. of N. Carolina at Chapel Hill,* 367 F.Supp.2d at 948–49. The Court is unaware of any other authority that authorizes the *ex parte* subpoena

requested by plaintiffs. Accordingly, the Court **DENIES** plaintiffs' Motion.

The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**