**AFFIRM; and Opinion Filed June 3, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-11-00758-CV**

_____

**AMBER AND ANTHONY GARDNER, INDIVIDUALLY
AND AS NEXT FRIENDS OF A.G., Appellants
V.
CHILDREN'S MEDICAL CENTER OF DALLAS, Appellee**

**On Appeal from the 101st Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-11-03686**

## OPINION

Before Justices Lang-Miers, Myers, and Lewis
Opinion by Justice Lewis

Appellants, Amber and Anthony Gardner, appeal from a take-nothing judgment in a medical malpractice lawsuit against Children's Medical Center (CMC). At the conclusion of a jury trial, the jury found CMC not liable, and the trial court entered a final judgment in favor of CMC and against the Gardners. In one issue on appeal, the Gardners question whether the heightened standard of proof in cases involving emergency medical care in certain facilities as set forth in Section 74.153 of the Texas Civil Practice and Remedies Code violates the Equal Protection Clauses of the Texas and United States Constitutions. We affirm the trial court's judgment.

# BACKGROUND

On January 12, 2006, ten-month-old A.G. arrived by ambulance in the emergency room at Medical Center of Mesquite. The child suffered a seizure on the way to the emergency room and was in respiratory distress. Dr. Dana Wingate, the emergency physician, placed an endotracheal tube in the child's airway, administered medication to control the seizure, and determined that the child needed a level of care not available at the Medical Center of Mesquite. Dr. Wingate called CMC to arrange A.G.'s transport to that facility. CMC dispatched an emergency transport team to Medical Center of Mesquite to provide emergency care to A.G. and transport her to CMC. The CMC team discovered that A.G. was not receiving sufficient oxygen and became concerned that her intubation tube was either blocked or improperly placed. The CMC team removed the intubation tube and made three unsuccessful attempts to reintubate A.G. The child went into respiratory and cardiac arrest. Dr. Wingate and the CMC team successfully administered cardiopulmonary resuscitation (CPR), and Dr. Wingate reintubated A.G. The child was then transported to CMC where she remained hospitalized for three weeks. As a result of her extended oxygen deprivation, A.G. now suffers from permanent brain damage, cerebral palsy, and cortical blindness.

The Gardners sued Medical Center of Mesquite, CMC, and various individuals involved in A.G.'s medical treatment. After settling with or dismissing all other defendants, the Gardners proceeded to a jury trial against CMC. At the close of evidence, the jury was charged with the liability question set forth in Section 74.154 of the Texas Civil Practice and Remedies Code, the legislatively-mandated instruction for cases involving emergency medical care in certain facilities. The Gardners objected to this jury question and requested an alternate question and instruction, arguing that imposition of the heightened standard of proof set forth in Section

74.154 violated the Equal Protection Clauses of the Texas and United States Constitutions. The trial court overruled the Gardners' objection and refused their alternate instruction.

The jury found that the emergency medical care rendered by CMC was not performed with willful or wanton negligence. The trial court entered a take-nothing judgment in favor of CMC and granted CMC's motion to sever so that final judgment could be entered without waiting for court approval of the settlements with other parties. The Gardners filed a motion for new trial again urging their equal protection argument, which was denied by operation of law. The Gardners then filed this appeal.

## ANALYSIS

In one issue, the Gardners challenge the constitutionality of section 74.153 of the Texas Civil Practice and Remedies Code, arguing that the heightened standard of proof in cases involving emergency medical care in certain facilities violates the Equal Protection Clauses of the Texas or United States Constitutions. Section 74.153 provides:

> In a suit involving a health care liability claim against a physician or health care provider for injury to or death of a patient arising out of the provision of emergency medical care in a hospital emergency department or obstetrical unit or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department, the claimant bringing the suit may prove that the treatment or lack of treatment by the physician or health care provider departed from accepted standards of medical care or health care only if the claimant shows by a preponderance of the evidence that the physician or health care provider, with wilful[1] and wanton negligence, deviated from the degree of care and skill that is reasonably expected of an ordinarily prudent physician or health care provider in the same or similar circumstances.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.153 (West 2011). The Gardners contend the statute classifies potential claimants into two categories: those who receive emergency medical care in

---

[1] Section 74.153 uses the spelling "wilful," but "willful" is the preferred American spelling. Bryan A. Garner, *The Redbook: A Manual on Legal Style* 278 (2nd ed., Thomson/West 2006); *see* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2616, 2617 (1993). Except in direct quotations, we use the preferred American spelling.

certain facilities (i.e., the hospital emergency department) and must meet the heightened standard of proof, and those who receive emergency medical care in non-covered facilities and must only meet the traditional standard of proof. The Gardners argue this classification is arbitrary, unreasonable, and not rationally related to a legitimate state interest.

The United States Constitution provides that no state shall deny any person within its jurisdiction the equal protection of the laws. U.S. CONST. amend. XIV, § 1. Our state constitution provides that all free men have equal rights. TEX. CONST. ANN. art. I, § 3 (West 2007). Texas cases echo federal standards when determining whether a statute violates equal protection under either provision. *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 846 (Tex. 1990). These standards are "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). However, "the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996). In order to reconcile the equal protection principle with practical necessity, the Court has developed differing levels of judicial scrutiny depending on the kind of classification at issue. *Id*. If the statute limits a fundamental, constitutionally secured right or discriminates against a suspect class, the statute is subject to strict scrutiny. *Cannady v. State*, 11 S.W.3d 205, 215 (Tex. Crim. App. 2000); *Kiss v. State*, 316 S.W.3d 665, 668 (Tex. App.—Dallas 2009, pet. ref'd). Otherwise, "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer*, 517 U.S. at 631; *see Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993). The Gardners concede the rational-basis test applies in this case.

Under the rational-basis test, a statute enjoys a strong presumption of validity, and the statute must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319–20 (1993); *In re G.C.*, 66 S.W.3d 517, 524 (Tex. App.—Fort Worth 2002, no pet.); *see also* TEX. GOV'T CODE ANN. § 311.021(1) (West 2005) (presumption that legislature, in enacting a statute, intended to comply with Texas and United States constitutions). "The judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam); *see Herrera v. Seton Nw. Hosp.*, 212 S.W.3d 452, 461 (Tex. App.—Austin 2006, no pet.) (the wisdom or expediency of a statute is the legislature's prerogative). The party challenging the rationality of the legislative classification has the burden of negating every conceivable basis that might support it. *Heller*, 509 U.S. at 320–21; *Beach Commc'ns,* 508 U.S. at 313–14. Moreover, the classification adopted by the legislature need not be perfectly tailored to its purpose in order to pass constitutional muster:

> [A] State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations–illogical, it may be, and unscientific. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*Kiss*, 316 S.W.3d at 668 (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)). Section 74.153 classifies health care liability claimants into two categories: (1) those who receive emergency medical care in certain settings and must meet a heightened standard of proof, and (2) those who receive emergency medical care in non-covered settings or receive non-emergency care and must only meet the traditional standard of proof. TEX. CIV. PRAC. & REM. CODE ANN. §

74.153. The dispositive question is whether there is any reasonably conceivable state of facts that could provide a rational basis for this classification. *Heller*, 509 U.S. at 320–21; *Beach Commc'ns,* 508 U.S. at 313–14.

Section 74.153 was adopted in 2003[2], as part of the tort-reform legislation commonly referred to as House Bill 4. *See* Michael S. Hull et al., *House Bill 4 and Proposition 12: An Analysis with Legislative History, Part One*, 36 Tex. Tech L. Rev. 1 (2005). In enacting chapter 74, the legislature made a number of findings about the state of the health care system in Texas. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11, 2003 Tex. Gen. Laws 847, 884–85. Specifically, it found the number of health care liability claims and the amounts paid out by insurers in judgments and settlements had dramatically increased since 1995, which created a serious public problem in availability and affordability of adequate medical professional liability insurance. *Id*. § 10.11(a)(1), (3), (4). The situation created a medical malpractice insurance crisis in Texas. *Id*. § 10.11(a)(5). This crisis had an adverse effect on the availability of medical and health care services in Texas. *Id*. § 10.11(a)(6). Further, this crisis increased costs to physicians, hospitals, patients, and the public. *Id*. § 10.11(a)(7). As a result, the legislature concluded the "adoption of certain modifications in the medical, insurance, and legal systems ... will have a positive effect on the rates charged by insurers for medical professional liability insurance." *Id*. § 10.11 (a)(12). None of the legislature's findings and goals specifically reference emergency medical care. The Gardners argue this lack of findings with respect to emergency medical care supports their contention that the legislature acted arbitrarily and unreasonably to enact a statute singling out and disadvantaging emergency care patients without articulating any basis for doing so. However, a legislature is not required to articulate its reasons

---

[2] Acts 2003, 78th Leg., ch. 204, effective September 1, 2003.

for enacting a statute. *Beach Commc'ns*, 508 U.S. at 315; *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980). It is "entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Beach Commc'ns*, 508 U.S. at 315. The absence of legislative facts explaining the distinction has no significance in rational-basis analysis. *Id.* (citing *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992). Equal protection "does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger*, 505 U.S. at 15. Thus, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315; *see also Mauldin v. Texas State Bd. of Plumbing Exam'rs*, 94 S.W.3d 867, 873 (Tex. App.—Austin 2002, no pet.).

Section 74.153 expanded the former Good Samaritan statute to include physicians in (or immediately after transfer from) hospital emergency departments. *Turner v. Franklin*, 325 S.W.3d 771, 777 n.6 (Tex. App.—Dallas 2010, pet. denied). The legislature acted to encourage physicians and other health care providers to provide emergency medical care. *Id.*, citing Michael S. Hull et al., *House Bill 4 and Proposition 12: An Analysis with Legislative History, Part Three*, 36 Tex. Tech L. Rev. 169, 267–68 (2005). House Bill 4 supporters argued the heightened standard of proof was appropriate because emergency room physicians were required to treat anyone who walked into an emergency room, often without benefit of medical history, and under extreme time pressure. House Research Org., Bill Analysis, Tex. H.B. 4, 78th Leg., R.S. (2003). During the senate committee hearing on House Bill 4, several witnesses testified that due to higher liability exposure, some physicians were no longer willing to provide on-call care in hospital emergency departments. *See* Hull et al., *supra*, at 268.

In *Dill v. Fowler*, one of our sister courts considered the constitutionality of section 74.153 in the face of an equal protection challenge. *See Dill v. Fowler*, 255 S.W.3d 681 (Tex. App.—Eastland 2008, no pet.). The decedent, David Dill, was taken to Brownwood Regional Medical Center's emergency room where diagnostic testing revealed he was suffering from internal bleeding. He was taken to surgery, where it was determined he had a ruptured splenic artery aneurysm. He died shortly thereafter. His widow, Teressa Dill, filed suit against several defendants, including Dr. Fowler and Dr. Wiley. The doctors filed no-evidence motions for summary judgment, arguing that because the patient was in a medical emergency when he arrived at the hospital emergency room, section 74.153 applied. Dill conceded she did not have evidence that the doctors were willfully and wantonly negligent, but argued section 74.153 was unconstitutional because it violated the equal protection provision of the Texas Constitution. The trial court granted the doctors' motions for summary judgment and dismissed Dill's claims. Concluding that section 74.153 was rationally related to a legitimate governmental purpose, the Eastland Court of Appeals stated:

> The legislature could rationally decide that Section 74.153 would help protect physicians from rising malpractice premiums and would make it easier for hospitals to recruit on-call physicians. The legislature could also rationally determine that the advantage of increased availability of emergency care statewide would offset its detrimental impact in individual cases.

*Id*. at 684.

In the case before this Court, CMC argues that the state has a legitimate interest in ensuring the provision and availability of emergency medical care to its citizens. CMC suggests the legislature could have concluded that health care institutions were experiencing problems in obtaining physician coverage for certain services, particularly in high risk areas such as emergency care, due to the high number of health care liability claims and the relative

unavailability of affordable malpractice insurance. CMC also suggests that the legislature could have distinguished between emergency medical care provided in a hospital emergency room and emergency medical care provided elsewhere because hospital emergency room physicians and health care providers are required by law to treat anyone who walks into the emergency room. CMC argues that because there are several scenarios that could provide a rational basis for a heightened burden of proof of negligence for physicians providing emergency care in a hospital emergency room, the Gardners' equal protection challenge must fail.

In determining whether the legislature had a rational basis for its actions, we must uphold the law if we can conceive of any rational basis for the legislature's action. *Kiss*, 316 S.W.3d at 669. The statute bears a rational relationship to the State's legitimate interest in ensuring the provision and availability of emergency medical care to its citizens. Under rational-basis review, we are compelled to accept a legislature's generalizations even where there is an imperfect fit between means and ends. *See Heller*, 509 U.S. at 320–21; *see also Maudlin*, 94 S.W.3d. at 873. A classification of health care liability claimants based on whether they receive emergency medical care in a hospital emergency room or whether they receive emergency medical care in a non-covered setting does not fail rational-basis review because in practice it results in some inequity. *See Heller*, 509 U.S. at 320–21. Accordingly, we conclude the classification does not violate the equal protection clauses of the United States and Texas Constitutions. The Gardners' sole issue on appeal is overruled.

**CONCLUSION**

Having overruled the Gardners' sole issue on appeal, we affirm the trial court's judgment.

/David Lewis/
DAVID LEWIS
JUSTICE

110758F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

AMBER AND ANTHONY GARDNER, INDIVIDUALLY AND AS NEXT FRIENDS OF A.G., Appellants

No. 05-11-00758-CV      V.

CHILDREN'S MEDICAL CENTER OF DALLAS, Appellee

On Appeal from the 101st Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-11-03686.
Opinion delivered by Justice Lewis.
Justices Lang-Miers and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee CHILDREN'S MEDICAL CENTER OF DALLAS recover its costs of this appeal from appellants AMBER AND ANTHONY GARDNER, INDIVIDUALLY AND AS NEXT FRIENDS OF A.G.

Judgment entered this 3rd day of June, 2013.

/David Lewis/
DAVID LEWIS
JUSTICE