**Reversed and Remanded and Opinion filed August 13, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00131-CV

---

### ROBERTO PORRAS, Appellant,

### V.

### MARY L. JEFFERSON, INDEPENDENT EXECUTOR OF THE ESTATE OF ANDREW L. JEFFERSON, JR., DECEASED, Appellee.

---

**On Appeal from the Probate Court No. 2**
**Harris County**
**Trial Court Cause No. 385,614-401**

---

### O P I N I O N

Appellant Roberto Porras appeals the trial court's order dismissing with prejudice his breach-of-contract claim and other claims against the appellee. The trial court, on its own motion, dismissed Porras's claims after discussing the parties' intended presentations of evidence at the start of trial. Because we conclude the trial court abused its discretion, we reverse and remand.

# I

In April 2008, Porras retained attorney Andrew L. Jefferson to represent him in a family-law matter. Porras signed a letter agreement with Jefferson and another lawyer, Lawrence F. Cerf, in which Jefferson and Cerf agreed to provide legal representation to Porras and Porras agreed to pay their stated hourly rates and costs, as well as an initial retainer of $50,000. The letter agreement specified that the retainer represented the minimum fee for the attorneys' services, and provided that if the case were resolved or the attorneys discharged before the retainer was exhausted, Porras would not be entitled to a refund in any amount.

At some point after the representation began, Jefferson became ill and later passed away. In December 2009, Porras sued Mary A. Jefferson, as the independent executor of Jefferson's estate, alleging that Porras had deposited a $25,000 retainer with Jefferson and approximately $15,000 of that amount was unused and owing to Porras. The executor answered with a general denial. Porras later amended his petition, alleging he had made payments to Jefferson totaling $35,000 and asserting claims for breach of contract, promissory estoppel, and conversion.

In Porras's breach-of-contract claim, he alleged that Jefferson failed to provide the agreed-upon services resulting in damages to Porras of $35,000. Porras also alleged that Jefferson promised to use his time, talent, resources, and experience to represent Porras in his lawsuit; Porras relied on that promise and paid him $35,000 for the representation; Jefferson knew or reasonably should have known that Porras would rely on his promise; Jefferson was unable to perform his promise; and Porras was damaged as a result. Finally, in the alternative, Porras alleged that Jefferson "wrongfully converted Plaintiff's money to his own use by withdrawing Plaintiff's money from his Trust Account without providing any

2

services or invoices to Plaintiff" and that the independent executor had refused to return Porras's money to him.

On September 12, 2011, the case was called to trial and a panel of potential jurors was ordered. Before the trial began, the trial court engaged in an extended discussion with the parties' counsel concerning their claims and defenses. The executor's counsel argued that the agreement was with Jefferson and Cerf, not just Jefferson, and Cerf completed the representation after Jefferson's death. Porras's counsel responded that Porras did not get what he paid for, which was the representation that Jefferson would have provided. Porras's counsel also argued that Porras had to pay additional money to Cerf to complete the case. The parties also disagreed on the amount of work Jefferson actually did on the underlying case before his death, and Porras's counsel represented that he was prepared to offer expert testimony concerning the circumstances surrounding the representation to support Porras's claims. Porras's counsel further argued that Jefferson removed funds from the trust account that were not earned.

The trial court, after reviewing the letter agreement and considering the parties' arguments, concluded that Porras's contract was with both Jefferson and Cerf and that the services were ultimately performed by Cerf. Thus, the trial court further concluded, Porras had no viable breach-of-contract claim and no damages. At the conclusion of the discussion between the court and the parties' counsel, the April 2008 letter agreement was "admitted into evidence" and appended to the reporter's record of the pretrial proceedings. On November 8, 2011, the trial court signed an "Order of Dismissal" dismissing Porras's claims with prejudice. In the order, the trial court stated in relevant part:

> In pretrial proceedings, the Court ascertained the nature of this claim
> together with the evidence upon which this claim is based. Following
> a review of the evidence and contract in question, along with

> arguments of counsel on the evidence and the applicable law, the Court finds that there was no breach of the contract in question nor recoverable damages.

Porras filed a motion for new trial, arguing that the trial court signed a final order even though no motion for summary judgment was presented and there was "no legal authority to take this action." The motion was overruled by operation of law.

## II

In his sole issue on appeal, Porras contends the trial court abused its discretion by dismissing his claims with prejudice. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). Although Porras's contentions are imprecise, we understand the thrust of his argument to be that his case was improperly dismissed "for lacking any arguable basis in the law because the court determined in pretrial that there was no cause of action." In other words, the trial court dismissed Porras's claims without a trial and without a motion from the executor seeking this relief.

Citing no authority, the appellee argues that it was within the trial court's inherent power to dismiss the case with prejudice. Accordingly, she maintains, we should affirm the judgment. But, a trial court's inherent power does not extend as far as the appellee contends.

A trial court possesses "inherent powers it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in preservation of its independence and integrity." *Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988). These powers are not derived from legislative grant or any specific constitutional provisions, but from the very fact that the court has been created and charged with certain duties and responsibilities. *Eichelberger v.*

4

*Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979). Examples of inherent judicial powers include the ability to (1) change, set aside or otherwise control judgments; (2) summon and compel the attendance of witnesses; (3) punish by contempt; (4) regulate the admission and practice of law; (5) and provide personnel to aid the court in the exercise of its judicial function. *Id.* at 398 n.1 (citations omitted).

A trial court also has the inherent power to control the disposition of cases "'with economy of time and effort for itself, for counsel, and for litigants.'" *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Further, a trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time. *Id.* at 241. And, though a trial court has the inherent power to dismiss a case for want of prosecution, this power does not confer upon the court the authority to adjudicate and deny the merits of the dismissed claim. *Attorney Gen. of Tex. v. Rideaux*, 838 S.W.2d 340, 341 (Tex. App.—Houston [1st Dist.] 1992, no writ); *see also Lum v. Lacy*, 616 S.W.2d 260, 261 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ) ("A judgment on the merits should not be made until the plaintiff has had his day in court").

It is clear that "between the court's 'inherent power' and the applicable rules of procedure and evidence, judges have broad, but not unfettered, discretion" in handling the cases that come before them. *In re Does 1-10*, 242 S.W.3d 805, 817 (Tex. App.—Texarkana 2007, orig. proceeding) (citing *Metzger v. Sebek*, 892 S.W.2d 20, 38–39 (Tex. App.—Houston [1st Dist.] 1994, writ denied)). But a trial court's inherent power does not include "the authority to make substantive rulings on issues such as the enforceability or validity of contracts." *In re Polybutylene Plumbing Litig.*, 23 S.W.3d 428, 438 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd). Moreover, where an extensive system is in place governing procedures

applicable to a situation, trial courts do not, in the absence of some extraordinary reason to depart from those procedures, have the inherent authority to create their own ad hoc procedures. *See In re Does 1-10*, 242 S.W.3d at 818.

There are procedural mechanisms in place that allow a trial judge to dispose of a case on the merits before it is submitted to the trier of fact. Among those mechanisms are motions for summary judgment and for directed verdict. *See* Tex. R. Civ. P. 166a (governing motions for summary judgment), 268 (governing directed-verdict motions). Inherent power does not permit a trial court to dismiss a party's claims on the merits without a pending motion.

* * *

We conclude that the trial court abused its discretion by dismissing Porras's claims, on its own motion, at the start of trial. We therefore sustain Porras's issue, and reverse and remand the case for further proceedings consistent with this opinion.


/s/     Jeffrey V. Brown
        Justice


Panel consists of Justices Frost, Brown, and Busby.