**Reversed and Remanded and Memorandum Opinion filed June 2, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00492-CV

**PAUL STAMATIS, JR., AS INDEPENDENT EXECUTOR OF THE ESTATE OF PAUL STAMATIS, DECEASED, Appellant**

**V.**

**METHODIST WILLOWBROOK HOSPITAL, THE METHODIST HEALTH CARE SYSTEM, DANIEL MAO, M.D., AND NEPTUNE EMERGENCY SERVICES, P.A., Appellees**

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-34910**

## M E M O R A N D U M   O P I N I O N

Appellant Paul Stamatis, Jr., as Independent Executor of the Estate of Paul Stamatis, sued appellees Methodist Willowbrook Hospital, the Methodist Health Care System, Daniel Mao, M.D., and Neptune Emergency Services, P.A. for negligence arising out of the medical care that Paul Stamatis received while at the

hospital. Before any evidence was taken, the trial court decided which standard of proof applied and that Stamatis would not be able to meet his burden. The trial court then signed a final take-nothing judgment against Stamatis. Stamatis contends that the trial court (1) erred by signing a take-nothing judgment on his claims; and (2) abused its discretion by excluding the deposition testimony of his expert on causation. We reverse and remand.

## BACKGROUND

On June 13, 2008, Paul Stamatis went to the emergency department at Methodist Willowbrook Hospital. Stamatis met with Dr. Daniel Mao, the emergency room physician on duty at the time, and complained about an injury to his forehead. Dr. Mao prescribed the antibiotic Bactrim for Stamatis's forehead injury. After taking the Bactrim, Stamatis began to suffer from severe abdominal pain. On the morning of June 15, Stamatis returned to the emergency room and saw Dr. Mao again. Stamatis presented with a pain level of "7" on a scale of one to ten and was triaged at level 3 under the Emergency Severity Index.[1]

Dr. Mao believed that Stamatis's pain was related to his urinary tract. Dr. Mao ordered a CT scan and that a Foley catheter be inserted. A technician and nurse attempted to insert the catheter, but were unable to do so. The CT scan revealed that Stamatis's bladder was distended. Dr. Mao ordered a normal consult from urologist Dr. Howard Lippman rather than an emergency consult.[2] Dr. Mao

---

[1] When discussing Stamatis's condition with the trial judge, Stamatis's counsel explained that "when you actually read the emergency medical ESI standards, a triage level 3 patient is deemed to be one of the less acute both in terms of immediate -- because the ESI index, the evidence will be is, that's a determination made by the triage nurse, does this patient really need to see a doctor? And if so, how fast?"

[2] Stamatis's counsel argued that the evidence at trial would show Dr. Lippman did not perceive this to be an emergency because he did not immediately go to see Stamatis at the hospital. A doctor specializing in urology did not see Stamatis until the next morning.

then decided to transfer Stamatis to the observation area of the hospital. Stamatis remained in the observation area until a urologist inserted a catheter the next morning. Stamatis was thereafter diagnosed with permanent detrusor muscle weakness of the bladder, requiring frequent self-catheterizations for the rest of his life.

Stamatis sued Methodist Willowbrook Hospital, the Methodist Health Care System, Daniel Mao, and Neptune Emergency Services (collectively, the Health Care Defendants), alleging that they were negligent in the care they provided while Stamatis was at the hospital. While the underlying case was pending, Stamatis unexpectedly died. On July 17, 2013, Stamatis's counsel filed a "Suggestion of Death" on behalf of Stamatis's son, Paul Stamatis Jr., to proceed as the plaintiff in his capacity as Independent Executor.

The parties were set to begin trial on March 4, 2014. On February 28, 2014, the Friday before trial, the Health Care Defendants filed a pleading, styled "Joint Brief in Support of Applicable Standard of Proof." In this brief, the Health Care Defendants argued that the applicable standard of proof at trial should be "willful and wanton negligence" because the case involved "emergency medical care." *See* Tex. Civ. Prac. & Rem. Code § 74.153.[3] The Health Care Defendants filed a "Supplemental Brief in Support of Applicable Ch. 74.153 Standard of Proof" on the day of trial.

On March 4, the case was called to trial and the parties appeared and announced ready. Methodist Willowbrook Hospital's counsel requested that the trial court address a "housekeeping matter." The trial court then stated:

---

[3] Section 74.153 uses the spelling "wilful," but "willful" is the preferred American spelling. *See Gardner v. Children's Med. Ctr. of Dallas*, 402 S.W.3d 888, 891 n.1 (Tex. App.— Dallas 2013, no pet.).

Now, we did meet over the weekend and work on some things. And while I'd like to get those on the record, I think really our time would be better spent this morning, since we all know what those rulings are, I think, going through the more pressing issues on Dr. Paynter and the emergency medical care question.

The trial court allowed the parties to discuss the Health Care Defendants' motion to exclude the deposition testimony of Stamatis's expert, Dr. Ronald Paynter. The trial court concluded that it would not allow Dr. Paynter to testify on the issue of causation.

The trial court then allowed the parties to argue which standard of proof would apply at trial. The parties disagreed as to whether Stamatis received "emergency medical care" under section 74.153 of the Texas Civil Practice and Remedies Code, and thus disagreed as to whether the willful and wanton standard applied. *See id.* Under this statute, the claimant in a health care liability case involving "emergency medical care" must prove that the health care providers acted with willful and wanton negligence, as opposed to the traditional ordinary negligence standard. *See id.*

After hearing the parties' arguments on which standard to apply but without admitting any evidence, the trial court determined as a matter of law that the willful and wanton standard applied because the Health Care Defendants provided emergency medical care. Subsequently, the Health Care Defendants "move[d] for entry of judgment based on lack of pleading of the higher standard of care." Because Stamatis had not pleaded any claims under the willful and wanton standard, the trial court afforded the parties forty-five days to supplement the record. Stamatis did not amend his pleadings or supplement the record.[4] On May

---

[4] When discussing which standard of proof should apply, Stamatis's counsel conceded that he did not believe the Health Care Defendants had acted in a willful and wanton fashion. Stamatis's counsel stated "[a]nd quite candidly, I'll put on the record, I don't believe that Dr.

4

23, 2014, the trial court signed a final judgment, ordering that Stamatis take nothing on all of his claims against the Health Care Defendants.

ANALYSIS OF STAMATIS'S ISSUE

In six issues, Stamatis contends that the trial court erred by signing a take-nothing judgment because the Health Care Defendants failed to prove as a matter of law that they provided emergency medical care. In his seventh issue, Stamatis asserts that the trial court abused its discretion by excluding the deposition testimony of his expert on causation.

**Standard of Proof in Cases Involving Emergency Medical Care**

Section 74.153 of the Texas Civil Practice and Remedies Code is titled "Standard of Proof in Cases Involving Emergency Medical Care." Tex. Civ. Prac. & Rem. Code § 74.153. This section governs healthcare liability claims for injuries or death arising from the provision of "emergency medical care" in a hospital emergency department, or in an obstetrical unit or surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department. *See id*.; *Turner v. Franklin*, 325 S.W.3d 771, 776 (Tex. App.—Dallas 2010, pet. denied). Section 74.153 provides that a claimant

> may prove that the treatment or lack of treatment by the physician or health care provider departed from accepted standards of medical care or health care only if the claimant shows by a preponderance of the evidence that the physician or health care provider, with wilful and wanton negligence, deviated from the degree of care and skill that is reasonably expected of an ordinarily prudent physician or health care provider in the same or similar circumstances.

Tex. Civ. Prac. & Rem. Code § 74.143. Under this statute, the claimant in a health

---

Mao or the nurses at Methodist were -- you know, met the gross negligence, willful standard part of it. And that's why it's not pled."

5

care liability case involving emergency medical care must prove that the health care providers acted with "willful and wanton negligence," as opposed to the ordinary negligence standard. *Guzman v. Mem'l Hermann Hosp. Sys.*, No. H-07-3973, 2009 WL 780889, at \*1 (S.D. Tex. Mar. 23, 2009). "The willful and wanton negligence standard was intended to offer doctors protection from liability for decisions made and actions taken during sudden emergency situations with no time for deliberation and no time to learn about the patient's history." *Id*. at \*8. This standard only applies when the claimant receives "emergency medical care" as defined by the statute. Tex. Civ. Prac. & Rem. Code § 74.001(a)(7); *Hawkins v. Montague Cnty., Tex.*, No. 7:10-CV-19-O ECF, 2010 WL 4514641, at \*15 (N.D. Tex. Nov. 1, 2010).

**The Trial Court Erred by Determining as a Matter of Law That Stamatis Received Emergency Medical Care**

In his first six issues, Stamatis argues that the trial court erred by signing a take-nothing judgment. Stamatis contends that the final judgment was improper because (1) the Health Care Defendants did not file a motion for summary judgment; (2) whether the Health Care Defendants provided emergency medical care is a disputed fact issue that the Health Care Defendants failed to prove as a matter of law; (3) ordinary negligence, not willful and wanton negligence, is the proper standard of proof; (4) the Health Care Defendants admitted that the care provided to Stamatis was non-emergent; and (5) the Health Care Defendants' brief and its attachments do not establish as a matter of law that emergency medical care was provided. Because Stamatis addresses these issues together in his brief, we also treat them as a single issue for purposes of our analysis.

After the case had already been called for trial and the parties made their appearances, the trial court allowed the parties to argue which standard of proof

would apply at trial. No motion had been filed, no evidence was admitted, and no witness was called to testify. After hearing the parties' arguments, the trial court concluded that the willful and wanton standard applied. The trial judge then stated,

> Okay. If I've understood *Turner*[5] correctly after this long discussion with everybody, and based on the medical information given to me, I do think this situation falls under the section that would require the willful and wanton standard. Presentation with the abdominal pain. There's been evidence given to me of what the potential consequences or causes of the abdominal pain could be.[6] The -- the testimony of Dr. Paynter also adds a potential serious consequence to the symptoms that the Plaintiff presented with in the emergency room. So that I think that the medical treatment that was rendered, the treatments and the diagnoses made are -- fall under the higher standard.

The trial court stated that in making this determination, it considered the Health Care Defendants' supplemental brief and Dr. Paynter's deposition.[7] Thus, the trial court concluded as a matter of law that Stamatis received emergency medical care and the willful and wanton standard of proof applied.

The Health Care Defendants argue that the trial court properly ruled as a matter of law that emergency medical care was provided because (1) a summary judgment motion was not required; (2) no disputed fact issue existed on whether

---

[5] The trial court primarily based its ruling on *Turner*, a case in which a patient went to the emergency room complaining of abdominal pain, nausea, and a pain level of "10" on a scale of one to ten. 325 S.W.3d at 774. In *Turner*, the court affirmed the trial court's grant of summary judgment in favor of the health care providers, holding that they proved patient's claims arose out of the provision of emergency medical care within the meaning of section 74.001(7). *Id*. at 779−80.

[6] Although the trial court stated that evidence was "given to me," no evidence was admitted during this hearing.

[7] The trial court stated that it "looked at the Defendant's supplemental brief and some more at Dr. Paynter's deposition. In the supplemental brief, I've been presented with testimony from Dr. Paynter that anything over 1 to 1.5 liters of retained urine would be sufficient to cause a permanent bladder injury if it was retained over 12 to 24 hours." However, the deposition was never admitted into evidence. *See* footnote 6, supra.

emergency medical care was provided; (3) there was no evidence Stamatis was stable and capable of receiving non-emergent care; and (4) the pleadings and evidence establish that the willful and wanton standard applies. In support of the contention that the trial court was authorized to rule on the standard of care at this stage of the proceedings, the Health Care Defendants rely on Texas Rule of Civil Procedure 166.

Although the case had been called for trial and the parties announced ready for trial, we construe the trial court's proceedings as a pre-trial conference. *See Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 323 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (providing that "the court had already called the case to trial when the first pretrial-conference hearing took place"); *Mason v. Tobin*, 408 S.W.2d 243, 244−45 (Tex. Civ. App.—Houston 1966, no writ) (construing hearing as a pretrial conference even though case was called for trial and parties announced ready for trial). Rule 166 expressly allows the trial court to use the pretrial conference to consider "[t]he identification of legal matters to be ruled on or decided by the court." Tex. R. Civ. P. 166(g); *Walden*, 97 S.W.3d at 322; *Mason*, 408 S.W.2d at 244−45. However, the trial court's authority in a pretrial conference is limited to deciding legal, not disputed issues. *See Walden*, 97 S.W.3d at 322. Thus, dismissal at a pretrial conference is allowed in limited situations when determination of a legal question is dispositive of a case in its entirety. *Martin v. Dosohs I, Ltd., Inc.*, 2 S.W.3d 350, 355 (Tex. App.—San Antonio 1999, pet. denied).

The Texas Rules of Civil Procedure provide several procedural vehicles that may be used to resolve a dispute between the parties. *In re Park Mem'l Condo. Ass'n, Inc.*, 322 S.W.3d 447, 451 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding). Those options include, among other things: trial on the merits, either

8

to a jury or the bench; motions for summary judgment; and agreements by the parties to compromise some or all of the party's claims. *Id*.; *see also Porras v. Jefferson*, 409 S.W.3d 804, 808 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("There are procedural mechanisms in place that allow a trial judge to dispose of a case on the merits before it is submitted to the trier of fact. Among those mechanisms are motions for summary judgment and for directed verdict.").

The Health Care Defendants argue that the facts are undisputed and that the trial court properly ruled as a matter of law that Stamatis received emergency medical care. In support of this proposition, the Health Care Defendants point to Stamatis's pleadings and Dr. Paynter's deposition. The Health Care Defendants direct this court to the following potions of Stamatis's first amended petition:

- After taking the Bactrim, Dr. Stamatis developed severe abdominal pain and on June 15, he returned to the Methodist Willowbrook E.R. and again saw Dr. Mao

- Dr. Mao and the nurses and employees of Methodist Willowbrook Hospital knew that it was imperative that Dr. Stamatis needed further medical care and Dr. Mao informed Dr. Stamatis that he had paged an on-call urologist, but that the urologist had failed to return any of his calls or pages

- Ultimately, a Foley catheter was finally inserted by a urologist, which for the first time drained the accumulated urine and fluid in his bladder, which by that time, had caused permanent and irreversible bladder damage from which Dr. Stamatis suffered up to the time of his death

First, we note that pleadings are not evidence, unless offered and admitted as evidence by the trial court. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Richards v. Comm'n for Lawyer Discipline*, 35 S.W.3d 243, 251−52 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Stamatis's first amended petition was never offered and admitted as evidence by the trial

court. Second, the pleadings do not establish as a matter of law that emergency medical care was provided. *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(7). Instead, Stamatis's pleadings reflect, at most, a dispute as to whether emergency medical care was provided. Third, we reject the Health Care Defendants' argument that Stamatis's pleadings establish by judicial admission that emergency medical care was provided. A judicial admission must be a clear, deliberate, and unequivocal statement. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000). It occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary. *Id*. The pleadings referenced above do not establish by judicial admission that emergency medical care was provided because they are not clear and unequivocal statements.

The Health Care Defendants also suggest that portions of Dr. Paynter's deposition establish as a matter of law that Stamatis received emergency medical care. However, Dr. Paynter's deposition testimony was never admitted into evidence and Dr. Paynter did not testify before the trial court. The Health Care Defendants argue that Rule 166(g) "allows a trial court to receive and consider evidence, including exhibits and expert testimony, at the pretrial hearing for the limited purpose of determining whether there is legally sufficient evidence to support submission of an issue to the jury." However, no evidence was admitted and Rule 166(g) expressly limits the trial court's authority in a pretrial conference to deciding legal issues only. *Walden*, 97 S.W.3d at 322. In this case, the trial court merely heard the parties argue and then determined as a matter of law which standard of proof applied. Thus, the Health Care Defendants' reliance on Rule 166(g) as authority for the trial court's decision is misplaced.

We recognize that a trial court has the inherent power to control the

10

disposition of cases "with economy of time and effort for itself, for counsel, and for litigants." *Porras*, 409 S.W.3d at 807. However, "[i]t is clear that between the court's 'inherent power' and the applicable rules of procedure and evidence, judges have broad, but not unfettered discretion in handling the cases that come before them." *Id.* at 808 (internal quotations omitted). A trial court's inherent power does not include "the authority to make substantive rulings on issues such as the enforceability or validity of contracts." *Id.* (quoting *In re Polybutylene Plumbing Litig.*, 23 S.W.3d 428, 438 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd)). Where an extensive system is in place governing procedures applicable to a situation, trial courts do not, in the absence of some extraordinary reason to depart from those procedures, have the inherent authority to create their own ad hoc procedures. *Id.* (citing *In re Does 1−10*, 242 S.W.3d 805, 818 (Tex. App.—Texarkana 2007, orig. proceeding)). Inherent power does not permit a trial court to dismiss a party's claims on the merits without a pending motion. *Id.*

We conclude that the trial court erred by disposing of Stamatis's case before trial in a manner not authorized by the Texas Rules of Civil Procedure. Nothing in the record establishes as a matter of law that Stamatis received emergency medical care. Throughout the entire case, the parties disagreed as to whether "emergency medical care" was provided as set forth in section 74.153. *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(7) (defining "emergency medical care").[8] Without the proper motion or other procedural vehicle, the trial court erred by concluding as a

---

[8] We recognize the apparent conflict between the Dallas Court of Appeals and federal district courts on what constitutes "emergency medical care." *Compare Turner*, 325 S.W.3d at 779−80 (stating that willful and wanton standard applied to patient's case even though physician provided non-emergency care and diagnosed patient's condition as non-emergent), *with Guzman*, 2009 WL 780889, at *7−8 (stating that willful and wanton standard only applies if physician provides emergent care and diagnoses the condition as an emergency). Because the trial court could not properly determine as a matter of law whether the willful and wanton standard applied, we need not resolve this conflict.

matter of law that Stamatis received emergency medical care. Therefore, the trial court abused its discretion by signing a take-nothing judgment in favor of the Health Care Defendants. *See Porras*, 409 S.W.3d at 807 (holding that trial court abused its discretion by dismissing plaintiff's claims before trial and without a motion from the defendant seeking this relief). Because Stamatis is entitled to a new trial, we need not reach Stamatis's seventh issue on the admissibility of his expert's deposition testimony.

## CONCLUSION

Because the trial court erred by signing a final take-nothing judgment against Stamatis, we reverse and remand for a new trial.


/s/　　Ken Wise
　　　　Justice


Panel consists of Justices Boyce, Brown, and Wise.